Jessie Wayne **KILLEBREW**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 6–87–001–CR.

Court of Appeals of Texas, Texarkana.

Dec. 15, 1987.

Rehearing Denied Jan. 20, 1988.

James M. McCoy, Mobley, Green & Harrison, Longview, for appellant.

John Tunnell, Asst. Dist. Atty., Longview, for appellee.

CORNELIUS, Chief Justice.

Jesse Wayne Killebrew was convicted of aggravated assault. After enhancement for prior offenses, punishment was set by the jury at forty years confinement.

In three points of error, Killebrew contends that the trial court erred in admitting into evidence an exhibit containing information about inadmissible extraneous offenses; in allowing the victim to testify at the punishment stage of the trial; and in returning jurors selected for service in this case to the panel for possible jury service in other cases. We overrule these points and affirm the judgment.

During the punishment phase of the trial, the State offered into evidence three "pen packets" marked State's Exhibits 8, 8–A and 9. Killebrew assigns error only as to Exhibit 8–A, contending that it contains inadmissible references to two prior burglary offenses. He argues that evidence of the offenses was not admissible because there was no final conviction in either of them.

The State contends that because Killebrew did not make a timely and specific objection to Exhibit 8–A on the ground that it contained records of inadmissible extraneous offenses, no error was preserved.

The State offered Exhibits 8, 8–A and 9 simultaneously. As to Exhibit 8, defense counsel asserted "the earlier objection ... as to the case law cited and the basis for the objection earlier made." He also objected to Exhibit 8 on the ground that it contained "extraneous offenses not otherwise admissible and not named in the Indictment." The objections were overruled and Exhibit 8 was admitted for record purposes only but not for consideration by the jury. Regarding Exhibit 9, defense counsel stated to the court, "As to 9, same objection." The court again overruled the objection and noted that all three exhibits

were received. Thereafter, the State's attorney began to read to the court a summary of Exhibit 8–A. Defense counsel interrupted and asked, "May I have a running objection so I don't have to interrupt her, Your Honor?" The court replied, "Yes, sir." The record reflects no more specific objection to Exhibit 8–A.

During the guilt/innocence phase of the trial, Killebrew did submit written objections to the various pen packets which the State indicated it would offer into evidence during the punishment phase. Those objections included objections to Exhibit 8–A on the ground that it contained extraneous offenses. At the commencement of the punishment phase of the trial, Killebrew's counsel announced ready subject to reassertion of the objection to admission of the three pen packets which he made outside the presence of the jury in the guilt/innocence phase. He specifically stated:

> [W]e ... would ask the Court to recognize, without the necessity of me fully stating with particularily (sic), the earlier objection, and the grounds and support therefor, that such objection as earlier cited into the record is not deemed after the verdict of the Jury at the guilt or innocence stage to be reasserted verbatim in toto at this time on the record prior to offer and tender of proof by the State.

Objections must be timely and must state specific grounds if the grounds are not apparent from the context. Tex.R.Crim. Evid. 103(a)(1). In most circumstances, a generalized "running objection" will not preserve error. *Goodman v. State*, 701 S.W.2d 850 (Tex.Crim.App.1985). The purpose of requiring specific and timely objections is to give the trial court the opportunity to recognize the inadmissible evidence, if any, in the exhibit being offered, and to exclude it while admitting the remainder of the exhibit.

■ We conclude that defense counsel's preliminary remarks at the beginning of the punishment phase did not serve to cure the deficiency in the "running objection" used later in the trial to object to Exhibit 8–A. The exhibit is a twelve-page document, and any objections to it should have been addressed to the specific portions considered inadmissible and should have had the reasons for the inadmissibility clearly stated. This would have given the State an opportunity to cure any error in the document's being offered into evidence.

Killebrew next contends that the trial court erred in admitting testimony by the victim of the assault, Kim Fletcher, during the punishment stage of the trial. Fletcher testified that she was afraid to be home alone or to drive alone, that she was scared every time someone looked at her, that she gets real nervous, that she thinks about the crime every day even though eight months have since elapsed, and that after the assault she had to pay the part of her medical bills not covered by insurance.

Killebrew contends the evidence was improper under the holding of *Booth v. Maryland*, 482 U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). In that capital murder case, the state introduced a written Victim Impact Statement made by the victims' family members. The Supreme Court held that this practice violated the Eighth Amendment to the United States Constitution because the statement gave the jury information about the personal characteristics of the victims, the emotional impact of their deaths on their family, and the family members' characterizations of the crimes and of the defendant, and that this information created an unacceptable risk that the jury would impose the death penalty in an arbitrary manner. The court, however, limited its ruling to capital cases, and noted that facts about the victim might be relevant in a noncapital trial. The court further observed that the trial judge continues to have the primary responsibility for deciding when the information is sufficiently relevant to some legitimate consideration to be admissible and when its probative value will outweigh any prejudicial effect. *Id.*, at ——, n. 10, 107 S.Ct. at 2535, n. 10, 96 L.Ed.2d at 452, n. 10.

■ Killebrew urges us to adopt the *Booth* rationale in this case. We believe *Booth* is distinguishable. It was a capital case, and the statement there was a writ-

ten statement from the victims' *family members* as to how the victims' murder affected them. The offense here was aggravated assault, and the testimony was from the victim herself who was on the stand and subject to cross-examination. Her testimony related to the nature and circumstances of the crime and its effect on her. We hold that facts such as those are legitimate considerations in assessing punishment where the crime is a violent assault on a person. We conclude that the trial court did not err in allowing the testimony.

■ In his final point of error, Killebrew argues that the trial court erred in returning jurors selected for service in this case to the panel for voir dire and possible jury service in other cases. At the conclusion of voir dire and jury selection in this case, the trial judge sent the selected jurors back to the jury panel for consideration in other trials for that week because the panel contained fewer members than was customary. With the permission of the court, defense counsel reserved his objection to this procedure until December 10, 1986, when the trial of this case began. At that time, defense counsel objected to the procedure because four of the jurors from the panel in this case served on a jury on December 9, 1986, in a case in which the voir dire instructions from the court included reference to eligibility for probation for that particular defendant. Killebrew argued that the receipt of that voir dire instruction in the third case tainted the jurors' minds in the instant case because the absence of a mention of eligibility for probation in his case led the jurors to conclude that Killebrew was not eligible for probation because of prior convictions.

The offense in the case on which four jurors from the jury in the present case were also seated was delivery of marihuana, an offense totally dissimilar from the aggravated assault for which Killebrew was tried. The logical extension of Killebrew's contention would be to subject any juror to a challenge for cause who had *ever* served on another jury on which probation eligibility had been included in voir dire.

Such an extension is not supported by the authorities, and would be unreasonable. *See Bolden v. State*, 683 S.W.2d 822 (Tex. App.—Texarkana 1984, pet. ref'd); *see also, Williams v. State*, 274 S.W.2d 704 (Tex.Crim.App.1954); *Carpenter v. State*, 149 Tex.Crim. 144, 192 S.W.2d 268 (1946); *Stephens v. State*, 137 Tex.Crim. 551, 132 S.W.2d 878 (1939).

Killebrew's contention that the four jurors in the instant case were tainted is speculation. He has pointed to nothing in the record to demonstrate that the four jurors were prejudiced or that he was harmed by their service on another jury in an unrelated case. Lacking a show of harm, the point is without merit. *See United States v. Brown*, 699 F.2d 704, 707 (5th Cir.1983).

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In his motion for rehearing, Killebrew argues that we have misstated the facts regarding jurors who served in intervening cases. He emphasizes that eight jurors in his case rather than four had intervening jury service in other cases.

Our opinion states that four of the jurors from the panel in this case served on a jury on December 9, 1986, *in a case in which the voir dire instruction from the court referenced the eligibility of that defendant for probation.* The offense in that intervening case was delivery of marihuana, an offense dissimilar from the aggravated assault charge for which Killebrew was tried. Four other jurors in the instant case served on a different intervening case which also involved a marihuana charge, *but the voir dire instructions in that case did not include a reference to probation eligibility.*

Killebrew cites *United States v. Brown*, 699 F.2d 704 (5th Cir.1983), as supporting his position. *Brown* reaffirmed that "jurors who have interim service on a convicting jury *in a similar case in which the government presented the same prosecuting witnesses* may be challenged for the reason of implied bias." *United States v.*

*Brown,* supra, at 708 (emphasis added). The intervening cases on which the jurors here sat were not similar to this case and were not cases in which the prosecution presented the same witnesses. Thus, *Brown* is inapposite.

The motion for rehearing is overruled.