In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00124-CV


______________________________






IN THE MATTER OF M.D.R., A JUVENILE







 


On Appeal from the 76th Judicial District Court


Morris County, Texas


Trial Court No. J-0202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 On May 3, 2001, Officer Jeff McCullough was working undercover in Daingerfield, Texas. 
McCullough, working with a confidential informant, arranged a drug transaction with M.D.R. and
another individual. McCullough testified he purchased two-tenths of a gram of crack cocaine from
M.D.R. McCullough also testified he did not know M.D.R.'s name at the time of the drug
transaction. The informant, however, identified M.D.R. by the nickname "Keno." McCullough
inquired of Officer Ross Dixon to determine the identity of "Keno." In response, Dixon showed
McCullough a middle school yearbook, which had the names blocked out, to see if McCullough
could find the juvenile who was involved in the drug transaction. McCullough selected M.D.R.'s
picture. 

 After a jury trial, the trial court found M.D.R. engaged in delinquent conduct and committed
him to the Texas Youth Commission for an indeterminate period of time, not to exceed M.D.R.'s
twenty-first birthday. On appeal, M.D.R.'s points of error assert the trial court (1) lacked personal
jurisdiction, (2) violated M.D.R.'s federal and state constitutional rights against self-incrimination,
and (3) erred by overruling M.D.R.'s motion to suppress photographic and testimonial identification
of M.D.R.

 In his first point of error, M.D.R. contends the trial court lacked personal jurisdiction over
him. The United States Supreme Court has established that a juvenile charged with delinquent
conduct must be given constitutionally adequate notice in a civil or criminal proceeding and that
such notice be given sufficiently in advance of trial to give the accused a reasonable amount of time
to prepare. In re Gault, 387 U.S. 1 (1967). Further, Section 53.06 of the Texas Family Code
provides that a juvenile court "shall direct issuance of a summons to . . . the child named in the
petition," among others, and also requires that "[a] copy of the petition must accompany the
summons." Tex. Fam. Code Ann. § 53.06 (Vernon 2002) (emphasis added). A juvenile court lacks
jurisdiction when the record contains no affirmative showing of service on the juvenile, despite the
juvenile's appearance at trial. In re D. W. M., 562 S.W.2d 851, 852-53 (Tex. 1978); see Tex. Fam.
Code Ann. § 53.06(e) (a child may not waive service of summons by written stipulation or voluntary
appearance at trial). 

 In In re A.B., 938 S.W.2d 537, 539 (Tex. App.-Texarkana 1997, writ denied), this Court held
that the trial court lacked personal jurisdiction because the State failed to properly serve the juvenile. 
Specifically, the petition was filed on January 4, 1996, and a preliminary hearing was conducted on
January 29, 1996. At that hearing, the trial court noted on the record that a copy of the petition had
been delivered to A.B.'s counsel, who in turn delivered it to A.B. The court asked A.B. if he wanted
another copy of the petition delivered to him personally, and A.B. declined  service.  See  Tex.  Fam.
 Code  Ann.  §  53.06(e)  (child  cannot  waive  service).  On appeal, A.B. contended the State failed
to satisfy the notice requirements set forth in the Texas Family Code. This Court held that (1)  the
 provisions of Sections 53.06 and 53.07 of the Texas Family Code were mandatory and (2) failure
to adhere to the language set forth therein would preclude the trial court from establishing personal
jurisdiction over the juvenile. Tex. Fam. Code Ann. § 53.07 (Vernon 2002); A.B., 938 S.W.2d at
538; In re T. T. W., 532 S.W.2d 418 (Tex. App.-Texarkana 1976, no writ). Because there was
nothing in the record affirmatively showing that a summons, accompanied by a copy of the petition,
was served on the juvenile, this Court held that the trial court did not have jurisdiction and remanded
the cause for a new trial.

 In the present case, there is no affirmative showing in the record that M.D.R. was served with
a copy of the petition. The summons served on M.D.R. merely informed him that he was to appear
in person at the Morris County courthouse at a specific date and time to answer the allegations of
the original petition filed on January 17, 2001. While the statute does not require that the summons,
or the return, expressly state that a copy of the petition was delivered, there must be some indication
in the record that a copy of the petition was served on the juvenile. See D.W.M., 562 S.W.2d at 852-53; Polanco v. State, 914 S.W.2d 269, 270-71 (Tex. App.-Beaumont 1996, pet. ref'd); In re
Edwards, 644 S.W.2d 815, 819-20 (Tex. App.-Corpus Christi 1982, writ ref'd n.r.e.). After
reviewing the record in its entirety, we find no indication M.D.R. was served with a copy of the
petition. (1) Because there was no showing of actual service of the petition on M.D.R., the trial court
did not have personal jurisdiction, we need not address M.D.R.'s other points of error, and we reverse
the trial court's judgment and remand the proceeding to the trial court for a new trial. See Tex. R.
App. P. 43.2; In the Matter of A.B., a Child, 938 S.W.2d at 539. 



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 10, 2003

Date Decided: July 22, 2003


1. There is some dispute among the courts of appeals concerning whether the trial court may
orally serve the juvenile with summons and a copy of the petition, but because the trial court made
no such attempt, that discussion would serve no purpose in the present case. See In re K.P.S., 840
S.W.2d 706, 709 (Tex. App.-Corpus Christi 1992, no writ); cf. In re A.B., 938 S.W.2d 537, 539
(Tex. App.-Texarkana 1997, writ denied). 


NDER RULE 401

 Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any
tendency to make the existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Warren cites and quotes rather extensively from Stavinoha v. State, 808 S.W.2d 76 (Tex.
Crim. App. 1991), Miller-El v. State, 782 S.W.2d 892 (Tex. Crim. App. 1990), and Brown v. State,
757 S.W.2d 739 (Tex. Crim. App. 1988), for the proposition that evidence of the post-incident
impact on S.E. should not have been allowed at the guilt/innocence phase of the trial. We do not
find these arguments persuasive.

 In Stavinoha, the defendant pled guilty to the charge of aggravated sexual assault; the sole
issue on appeal was whether the trial court had erred by admitting testimony during the punishment
trial from the victim and her mother regarding the impact Stavinoha's crime had brought upon the
victim and her family. 808 S.W.2d at 77. The Texas Court of Criminal Appeals ultimately
concluded the trial court had not erred. Id. at 78-79; cf. Killebrew v. State, 746 S.W.2d 245, 247-48
(Tex. App.--Texarkana 1987, pet. ref'd). Despite the end result of Stavinoha, that case is
procedurally distinguishable from the case at bar. The question in Stavinoha concerned the
admission of testimony during punishment. Warren's arguments in the case now before this Court
concern the trial court's decision to admit such evidence during the trial on guilt/innocence. We,
therefore, conclude Stavinoha provides little support for Warren's points of error. See Stavinoha,
808 S.W.2d at 78 (distinguishing a review of evidence admitted at punishment from review of
evidence admitted during guilt/innocence).

 Miller-El was an attempted capital murder case in which testimony by the physician (who
had treated one of the victims) was admitted during the punishment trial about the nature of the
victim's injuries and the latter's prognosis when he arrived at the emergency room. 782 S.W.2d at
893. In an unreported opinion, the Dallas Court of Appeals reversed the trial court's decision to
allow such evidence. Id. The Texas Court of Criminal Appeals reversed the Dallas court, reinstating
the trial court's judgment. Id. at 897. Like Stavinoha, Miller-El is procedurally distinguishable from
the case before us in that the issue in Miller-El concerned the admission of evidence during the
punishment phase of a trial, rather than guilt/innocence. Additionally, Miller-El is factually
distinguishable because it concerned only testimony from a witness who was not a victim of the
accused's alleged criminal conduct. See, e.g., Roberts v. State, 220 S.W.3d 521, 531 (Tex. Crim.
App. 2007) (testimony by victim of another crime properly admitted by trial court and did not
constitute "victim impact" testimony); Espinosa v. State, 194 S.W.3d 703, 711 (Tex. App.--Houston
[14th Dist.] 2006, no pet.) (distinguishing admissible impact testimony from potentially inadmissible
impact testimony based on whether indictment specifically names testifying witness). Moreover,
the fact that such evidence was allowed in Miller-El in the punishment phase does not mean that the
same kind of evidence was necessarily disallowed at the guilt/innocence phase in Warren's trial.

 Of the three cases mentioned above, the most relevant to this matter is Brown, 757 S.W.2d
739. In Brown, the defendant was charged with sexual assault. Id. Brown, while denying that he
had been the perpetrator of the assault (he presented an alibi defense), never denied that the assault
had occurred. Id. at 740. Nevertheless, the trial court allowed evidence in the guilt/innocence phase
of the trial as to the emotional impact the assault trauma had visited on the victim. Id. The Texas
Court of Criminal Appeals concluded the evidence of trauma was irrelevant as to the matter of guilt,
but the court reached this result because there was no contest raised by Brown to the issue of whether
an assault actually did occur. (1) Under Brown, if it is contested that an offense of the nature of sexual
assault actually did occur, then the subsequent adverse reaction of the victim to the occurrence is
relevant to show the fact of the occurrence. Id.; cf. Longoria v. State, 148 S.W.3d 657 (Tex.
App.--Houston [14th Dist.] 2004, pet. ref'd).

 Warren now maintains that he never questioned or put into issue the fact that S.E. had been
sexually assaulted, only disputing his participation in the assault; in other words, Warren takes the
position that the assault was carried out solely by Prince and that he did not engage in the activities
for which he had been charged. Therefore, Warren posits, the testimony concerning the emotional
impact of the sexual assault on S.E. was not relevant to the issue of his guilt or innocence because
S.E. would have suffered the same traumas whether it was carried out solely by Prince or whether
it was jointly performed by the two of them as the testimony showed. 

 The problem is: Warren's trial strategy of taking the position that a sexual assault did occur,
but that he was not a participate in that assault, is not clearly enunciated anywhere in the record. The
first time this strategy is unequivocally indicated is in the brief filed with this Court. There are hints
of that trial posture in Warren's closing arguments, but there is certainly nothing in Warren's conduct
of the trial as the State was building its case to suggest that Warren admitted that any sexual assault
occurred. 

 The first mention of this post-incident impact trauma to S.E.'s psyche was presented during
testimony from S.E.'s mother. When it first arose, Warren objected to its introduction. At a bench
conference concerning the objection, this exchange occurred:

 [Warren's Counsel]: . . . . This testimony is much more suitable for
sentencing rather than guilt/innocence. It is prejudicial and has nothing to do with
whether or not the offense happened, whether it was committed by my client. 


 [The State]: The behavior of the child is certainly relevant to whether or not
it occurred.


 [Warren's Counsel]: Sentencing phase.


(Emphasis added.)

 The second time that the matter of S.E.'s post-incident conduct arose was during the
testimony of S.E. herself. At that time, again at an exchange out of the hearing of the jury, it was
said:

 [Warren's Counsel]: Judge, I understand that you note my running objection,
but I have to strongly reurge the objection. It has nothing to do with the
guilt/innocence phase or whether or not the offense occurred, whether or not my
client exhibited the offense. It has completely to do with sentencing and victim
impact and things of that nature. But it's completely inappropriate.


 [The State]: May I respond, Your Honor?


 THE COURT: Yes.


 [The State]: The evidence tends to support the credibility of the witness as
to the traumatic event that she has previously testified to. It is in support of the
credibility of her testimony.


 [Warren's Counsel]: The credibility of her testimony is best buttressed by her
recollection of the offense, alleged offense, and what occurred that night, but if there
is any probative value to it, it's far outweighed by the prejudicial value to my client.


(Emphasis added.)

 The final venture into the post-incident impact involved the testimony of licensed
professional counselor Smith. Warren again objected along the same vein as before, insisting that
Smith's testimony was not "relevant or applicable to whether [Warren] committed the criminal
offense he's been indicted with" and that it is "really intended to inflame the jury on guilt/innocence
phase, as opposed to sentencing."

 There are other decisions that, when quotes are taken out of context, would suggest that no
such testimony from the victim about how the crime impacted her life is admissible at the
guilt/innocence stage of a trial. See, e.g., McClenton v. State, 167 S.W.3d 86, 92 (Tex. App.--Waco
2005, no pet.) ("The crime's after-effects on the victim is not relevant at the guilt-innocence phase.");
Garrett v. State, 815 S.W.2d 333 (Tex. App.--Houston [1st Dist.] 1991, pet. ref'd). However, those
cases are easily distinguishable from this; in those cases, there was not a question as to whether the
crime existed. In the instant matter, the post-incident impact on the child is probative of whether the
assault did, indeed, occur, because Warren never formally admitted at trial that the victim had been
sexually assaulted by someone (even by someone other than himself).

 In none of these objections (nor at any other occasion in the trial) does Warren unequivocally
concede that a sexual assault on S.E. did take place; and if there is an implication to that effect, it
is so muted and so faint that the trial court or the State would be engaging in rank speculation to
assume that this was Warren's intention. (2) Rather, the objections as lodged to this testimony appear
limited to two possible points: (1) that the testimony belongs solely at the punishment phase and
(2) that even if it were otherwise relevant on the issue of guilt or innocence, it should be disallowed
because its prejudicial effect outweighs its probative value.

 In every criminal case, the burden is on the accuser to prove three separate elements or
component parts: (1) the specific kind of injury or loss, (2) that someone's criminality occasioned
that injury or loss (as opposed to an accident, for instance), and (3) the identity of the person who
committed the act. Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002). In this case, it was
the responsibility of the State to show that certain sexual acts were performed on S.E., that these
sexual acts were intentionally performed, and the identity of the perpetrator(s) of the act. 

 Had Warren expressly acknowledged that a sexual assault on S.E. had occurred, evidence of
the consequences of such an attack on the mind of S.E. would have been rendered irrelevant. 
However, he did not. Therefore, the post-incident impact on the behavior of S.E. was relevant
evidence of the fact that the assault did, in fact, occur. Cf. Longoria, 148 S.W.3d at 659-60
(testimony that two juvenile victims' "[B]ehavior and long-term prognosis would have a tendency
to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant
committed the crimes at all.").

 The testimony in this trial differs markedly from the circumstances in which an expert
testifies that the post-trauma conduct of the victim tends to show that the victim is telling the truth,
such as was the situation in Sessums v. State, 129 S.W.3d 242 (Tex. App.--Texarkana 2004, pet.
ref'd). In that circumstance, the expert, having visited with the child, rendered the opinion that the
child victim was being truthful. This Court ruled the testimony inadmissible. However, the
testimony of S.E. and her mother as to the post-incident conduct of S.E. laid the foundation for the
expert testimony of Smith, who testified that based upon her expert opinion, the self-mutilation
conduct of S.E. was consistent with the conduct of other children who had suffered molestation.
Smith did not venture into her opinion of the truth and veracity of S.E. The courts have repeatedly
determined such expert testimony to be relevant and admissible. Cohn v. State, 849 S.W.2d 817
(Tex. Crim. App. 1993); Kirkpatrick v. State, 747 S.W.2d 833, 836 (Tex. App.--Dallas 1987, pet.
ref'd).

 Accordingly, we hold that the trial court could have reasonably concluded that the
complained-of evidence in this case was both relevant and probative to the issue of whether Warren
had engaged in the conduct for which he was being prosecuted. It matters not that a different trial
court might have, acting out of a greater (and some might argue more prudent) sense of caution,
disallowed this same testimony during the guilt/innocence portion of the trial; the test for appellate
review of the trial court's decision requires more--it requires a showing that the trial court's decision
is outside the zone of reasonable disagreement. In Texas, caselaw supports the trial court's decision
to admit the complained-of testimony, and as such, we cannot say the trial court erred. We overrule
Warren's first point of error.

ADMISSIBILITY UNDER RULE 403

 Even after concluding that evidence is relevant and, therefore, admissible into evidence
pursuant to Rule 401 of the Texas Rules of Evidence, potentially prejudicial evidence must also vault
the hurdle cast by Rule 403. Rule 403 instructs that although some evidence may be relevant, it
"may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice . . . ." Tex. R. Evid. 403. 

 It is significant that Rule 403 employs the word "may," implying that a determination under
this rule is inherently discretionary with the trial court. Montgomery v. State, 810 S.W.2d 372,
378-79 n.7 (Tex. Crim. App. 1990). A trial court, having the ability to observe and weigh the
intonation and demeanor of the witnesses, is in the best position to determine the emotional reaction
of the jury to that evidence. State v. Mechler, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

 A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not
limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress
the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and
(4) the proponent's need for the evidence. Erazo v. State, 144 S.W.3d 487, 488 (Tex. Crim. App.
2004).

Relevant evidence may be excluded if its probative value is not worth the problems
that its admission may cause. The issue is whether the search for truth will be helped
or hindered by the interjection of distracting, confusing, or emotionally charged
evidence. In making this determination, the [trial] court must assess the probative
value of the proferred item as well as the harmful consequences specified in Rule 403
that might flow from its admission.


Gigliobianco v. State, 210 S.W.3d 637, 640-41 (Tex. Crim. App. 2006).

 Rule 403 does not exclude all prejudicial evidence; rather, it focuses only on the danger of
"unfair" prejudice. "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury
into finding guilt on grounds apart from proof of the offense charged. Mechler, 153 S.W.3d at 440. 

 Having already determined that the evidence of the post-incident conduct of S.E. was
admissible for the purpose of showing that the assault actually did occur, the trial court then
exercised its discretion in determining whether the potential prejudice it might engender would
outweigh the probative value it would provide. 

 Employing the abuse of discretion standard which was stated above, we determine that the
admission of this evidence was not outside the zone of reasonable disagreement; therefore, the trial
court did not abuse its discretion in allowing the admission of the evidence. We overrule Warren's
second point of appeal.

ELIMINATION OF THE PRESUMPTION OF INNOCENCE

 In order to prevail on the claim that the actions of the trial court effectively removed the
presumption of innocence, Warren must first have prevailed on one of his first two points of error.
Because we conclude the trial court did not err in allowing the complained-of evidence, it is
unnecessary for us to address Warren's third point of error concerning the degree of harm caused by
the alleged error.

 For the reasons stated, we affirm the trial court's judgment.



 Bailey C. Moseley

 Justice




CONCURRING OPINION

 The majority opinion finds the evidence of the self-destructive behavior of S.E. was
admissible because Shawn Franklin Warren did not concede that a sexual assault occurred; since it
was necessary to prove that the assault occurred, the self-destructive behavior was relevant as
evidence of recent trauma. I am not convinced that there was a genuine dispute at this trial about the
occurrence of a sexual assault to S.E. during this episode. Early in the State's case, Ashley Prince,
the codefendant, admitted that both she and Warren sexually assaulted S.E. The cross-examination
of Prince attempted to establish that only Prince sexually assaulted S.E. while Warren was asleep
in another room. (3) The defense appeared to be that Warren did not participate in the sexual abuse,
not that no abuse occurred. I believe that the testimony of self-mutilation is admissible, but for
different reasons than presented in the majority opinion.

 In Cohn v. State, an expert testified that children who have been sexually assaulted may show
signs including depression and nervousness. The Texas Court of Criminal Appeals held that, even
though these symptoms did not demonstrate sexual behaviors, expert testimony about signs of
serious anxiety or post-traumatic stress disorder may still be relevant to establish that the child
experienced some type of traumatic event. 

 [To] the extent it [the expert testimony] only provided circumstantial evidence that
the children did experience some traumatic event, Dr. Roy's testimony, both that
anxiety behavior is at least consistent with sexual abuse, and that the children here
exhibited such behavior in his presence, was relevant evidence, under
Tex.R.Cr.Evid., Rules 401 & 402. It should come in as substantive evidence unless
"its probative value is substantially outweighed by the danger of unfair
prejudice . . . ." Tex.R.Cr.Evid., Rule 403.


849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (footnote omitted). 

 Here, an expert witness testified about symptoms experienced by children who have been
sexually assaulted. (4) Smith testified that self-mutilation is a coping mechanism displayed by children
who have been sexually abused if they have not been able to express verbally the intense emotional
trauma the abuse causes. Further, Smith stated that the act of cutting provides the victim with an
emotional release from the abuse and is very often the result of the victim having been abused and
most often sexually abused.

 S.E.'s mother testified about the self-mutilation. That testimony, standing alone, very well
may not have provided probative evidence that S.E. suffered sexual abuse. Generally, one reason
to allow expert testimony is to connect the lay witness testimony regarding factual details to the
scientific explanation for such actions. See Williams v. State, 895 S.W.2d 363, 366 (Tex. Crim. App.
1994). Here, the expert testimony supplied the same kind of testimony that has been allowed in
many other sexual abuse cases. See Perez v. State, 113 S.W.3d 819, 832 (Tex. App.--Austin 2003,
pet. ref'd) ("Expert testimony that a child exhibits behavioral characteristics that have been
empirically shown to be common among children who have been abused is relevant and admissible
as substantive evidence under Rule 702."); Hitt v. State, 53 S.W.3d 697, 707 (Tex. App.--Austin
2001, pet. ref'd). The expert testimony acts as a connection between the actions of the victim (self-mutilation) and the occurrence of a sexual assault. 

 Since the expert supplied the causal connection between the sexual assault and the
self-mutilation, I believe the expert's testimony was admissible. Likewise, because of such
connection, the mother's testimony that S.E. displayed self-mutilation became probative and
admissible. 

 Further, Rule 403 does not require impeachment before this substantive expert evidence,
which has the effect of bolstering, is admissible. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim.
App. 1993) (citing Cohn, 817 S.W.2d at 819). 

 I concur in the judgment of the court, but believe Cohn and its progeny supply the proper
basis for admitting the disputed testimony. 



 Jack Carter

 Justice


Date Submitted: August 6, 2007

Date Decided: September 21, 2007


Publish

1. Nevertheless, it was determined that the same evidence was admitted without objection and
was cumulative of other unobjected-to testimony, rendering any error harmless. Brown, 757 S.W.2d
at 741.
2. During jury argument, Warren apparently continued to challenge the issue of whether the
alleged sexual assault was fact or fiction. Among his statements to the jury is included, "[I]t would
be important for you to look at those records to see what the records denote as far as penetration,
whether or not it actually occurred."
3. Prince was asked by defense counsel on cross-examination: "Isn't it true that that night you
and [S.E.] had a sexual encounter in the back bedroom, and my client was asleep in the master
bedroom?" 
4. No challenge is made to the qualifications of the expert or that such testimony did not meet
the necessary standards.