Shawn Franklin WARREN, Appellant

v.

The STATE of Texas, Appellee.

No. 06–07–00026–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 6, 2007.

Decided Sept. 21, 2007.

Jeremy Coe, Henderson, for appellant.

Bill Saban, Asst. Dist. Atty., Michael Jimerson, Dist. Atty., Henderson, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

Having been found guilty by a jury of sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.011 (Vernon Supp.2006), and sentenced to seven years' confinement, Shawn Franklin Warren brings this appeal. We affirm the trial court's judgment.

### FACTS

The incident that precipitated the filing of charges against Warren commenced on March 16, 2002, when Warren and his girlfriend, Ashley Nicole Prince, were at a family get-together at the home of Warren's aunt. The evidence at trial showed that when it was time to leave, Warren's cousin and her fourteen-year-old friend, S.E., left with Warren and Prince to spend the night at Prince's residence. On the way to Prince's residence, Warren made a way-stop to purchase vodka and mixers and then they all proceeded to the Prince residence, where all four drank vodka and smoked marihuana together.

During the night, S.E. came to be under the influence of the drugs and alcohol and was in bed with both Warren and Prince. S.E. began to weep and cry out that she was a virgin and asked to be left alone. When Warren's cousin came into the bedroom where they were, Warren threatened to kill her unless she left. Prince then performed cunnilingus acts on S.E. (both around and in her vagina) and Warren inserted his finger into S.E.'s vagina.

The next morning when S.E. awoke, Prince recounted the things that had been done the night before. Using her cell phone, S.E. called her mother and asked her to come immediately and take her home. On the way from Prince's house, S.E. related the previous night's events to her mother, who contacted the police; S.E. was taken to more than one hospital for examination and was interviewed by representatives of the Child Advocacy Center.

There was testimony from Prince that related the entire incident; S.E. told the same story; and S.E.'s mother testified as to the outcry made by S.E. the morning after the incident, during which S.E. had told her mother of the occurrences of the night before.

Between the night of the incident and the time of trial, S.E. and her mother testified S.E. began to demonstrate self-destructive behavior by cutting herself with sharp instruments on her arms and

legs and by hitting walls with her arms hard enough to have fractured a bone.

At trial, and over Warren's objection, S.E. and her mother each testified at some length about S.E.'s self-destructive behavior that had arisen since the incident and about how the actions of Warren and Prince had detrimentally impacted S.E.'s mental state. Kelly Smith, a licensed professional counselor (who had not interviewed S.E.) testified about the general post-trauma propensities of children who are victims of sexual abuse toward self-destructive behavior; as he had with the testimony of S.E. and her mother regarding the post-incident behavior, Warren strenuously objected.

## POINTS OF APPEAL

Warren raises three points of appeal, collectively alleging that the trial court denied Warren's due-process rights (1) "by admitting evidence that was not relevant to the indicted offense as proscribed by TEX.R.CRIM. EVID. 401," (2) "by admitting evidence that was more prejudicial than probative as proscribed by TEX.R.CRIM. EVID. 403," and (3) because the erroneous admission of certain evidence eliminated the presumption of innocence, thereby violating Article 37.07 of the Texas Code of Criminal Procedure. Each of these points of error complains about the admission of the same evidence during the guilt/innocence portion, specifically, the evidence involving the sexual assault's psychological impact on S.E. The first and second of these points argue it was error to allow the testimony; the third point takes the position that the alleged error was so egregious that it warrants reversal.

## STANDARD OF REVIEW

 In determining whether a trial court erred in admitting evidence, the standard of review is abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App.2005). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim.App.2007).

## ADMISSIBILITY UNDER RULE 401

Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. EVID. 401.

 Warren cites and quotes rather extensively from *Stavinoha v. State*, 808 S.W.2d 76 (Tex.Crim.App.1991), *Miller–El v. State*, 782 S.W.2d 892 (Tex.Crim.App. 1990), and *Brown v. State*, 757 S.W.2d 739 (Tex.Crim.App.1988), for the proposition that evidence of the post-incident impact on S.E. should not have been allowed at the guilt/innocence phase of the trial. We do not find these arguments persuasive.

In *Stavinoha*, the defendant pled guilty to the charge of aggravated sexual assault; the sole issue on appeal was whether the trial court had erred by admitting testimony during the punishment trial from the victim and her mother regarding the impact Stavinoha's crime had brought upon the victim and her family. 808 S.W.2d at 77. The Texas Court of Criminal Appeals ultimately concluded the trial court had not erred. *Id.* at 78–79; *cf. Killebrew v. State*, 746 S.W.2d 245, 247–48 (Tex.App.-Texarkana 1987, pet. ref'd). Despite the end result of *Stavinoha*, that case is procedurally distinguishable from the case at bar. The question in *Stavinoha* concerned the admission of testimony during punishment. Warren's arguments in the case now before this Court concern the trial court's decision to admit such evidence during the trial on guilt/innocence. We, therefore, conclude *Stavinoha* provides lit-

tle support for Warren's points of error. *See Stavinoha,* 808 S.W.2d at 78 (distinguishing a review of evidence admitted at punishment from review of evidence admitted during guilt/innocence).

*Miller–El* was an attempted capital murder case in which testimony by the physician (who had treated one of the victims) was admitted during the punishment trial about the nature of the victim's injuries and the latter's prognosis when he arrived at the emergency room. 782 S.W.2d at 893. In an unreported opinion, the Dallas Court of Appeals reversed the trial court's decision to allow such evidence. *Id.* The Texas Court of Criminal Appeals reversed the Dallas court, reinstating the trial court's judgment. *Id.* at 897. Like *Stavinoha, Miller–El* is procedurally distinguishable from the case before us in that the issue in *Miller–El* concerned the admission of evidence during the punishment phase of a trial, rather than guilt/innocence. Additionally, *Miller–El* is factually distinguishable because it concerned only testimony from a witness who was not a victim of the accused's alleged criminal conduct. *See, e.g., Roberts v. State,* 220 S.W.3d 521, 531 (Tex. Crim.App.2007) (testimony by victim of another crime properly admitted by trial court and did not constitute "victim impact" testimony); *Espinosa v. State,* 194 S.W.3d 703, 711 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (distinguishing admissible impact testimony from *potentially* inadmissible impact testimony based on whether indictment specifically names testifying witness). Moreover, the fact that such evidence was allowed in *Miller–El* in the punishment phase does not mean that the same kind of evidence was necessarily

disallowed at the guilt/innocence phase in Warren's trial.

■ Of the three cases mentioned above, the most relevant to this matter is *Brown,* 757 S.W.2d 739. In *Brown,* the defendant was charged with sexual assault. *Id.* Brown, while denying that he had been the perpetrator of the assault (he presented an alibi defense), never denied that the assault had occurred. *Id.* at 740. Nevertheless, the trial court allowed evidence in the guilt/innocence phase of the trial as to the emotional impact the assault trauma had visited on the victim. *Id.* The Texas Court of Criminal Appeals concluded the evidence of trauma was irrelevant as to the matter of guilt, but the court reached this result because there was no contest raised by Brown to the issue of whether an assault actually did occur.[1] Under *Brown,* if it is contested that an offense of the nature of sexual assault actually did occur, then the subsequent adverse reaction of the victim to the occurrence is relevant to show the fact of the occurrence. *Id.; cf. Longoria v. State,* 148 S.W.3d 657 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd).

Warren now maintains that he never questioned or put into issue the fact that S.E. had been sexually assaulted, only disputing his participation in the assault; in other words, Warren takes the position that the assault was carried out solely by Prince and that he did not engage in the activities for which he had been charged. Therefore, Warren posits, the testimony concerning the emotional impact of the sexual assault on S.E. was not relevant to the issue of his guilt or innocence because S.E. would have suffered the same traumas whether it was carried out solely by Prince or whether it was jointly performed

1. Nevertheless, it was determined that the same evidence was admitted without objection and was cumulative of other unobjected-

to testimony, rendering any error harmless. *Brown,* 757 S.W.2d at 741.

by the two of them as the testimony showed.

The problem is: Warren's trial strategy of taking the position that a sexual assault did occur, but that he was not a participate in that assault, is not clearly enunciated anywhere in the record. The first time this strategy is unequivocally indicated is in the brief filed with this Court. There are hints of that trial posture in Warren's closing arguments, but there is certainly nothing in Warren's conduct of the trial as the State was building its case to suggest that Warren admitted that any sexual assault occurred.

The first mention of this post-incident impact trauma to S.E.'s psyche was presented during testimony from S.E.'s mother. When it first arose, Warren objected to its introduction. At a bench conference concerning the objection, this exchange occurred:

> [Warren's Counsel]: . . . . This testimony is much more suitable for sentencing rather than guilt/innocence. It is prejudicial and has nothing to do with *whether or not the offense happened,* whether it was committed by my client.
>
> [The State]: The behavior of the child is certainly relevant to whether or not it occurred.
>
> [Warren's Counsel]: Sentencing phase.

(Emphasis added.)

The second time that the matter of S.E.'s post-incident conduct arose was during the testimony of S.E. herself. At that time, again at an exchange out of the hearing of the jury, it was said:

> [Warren's Counsel]: Judge, I understand that you note my running objection, but I have to strongly reurge the objection. It has nothing to do with the guilt/innocence phase or whether or not the offense occurred, whether or not my client exhibited the offense. It has completely to do with sentencing and victim impact and things of that nature. But it's completely inappropriate.
>
> [The State]: May I respond, Your Honor?
>
> THE COURT: Yes.
>
> [The State]: The evidence tends to support the credibility of the witness as to the traumatic event that she has previously testified to. It is in support of the credibility of her testimony.
>
> [Warren's Counsel]: The credibility of her testimony is best buttressed by her recollection of the offense, *alleged offense,* and what occurred that night, but if there is any probative value to it, it's far outweighed by the prejudicial value to my client.

(Emphasis added.)

The final venture into the post-incident impact involved the testimony of licensed professional counselor Smith. Warren again objected along the same vein as before, insisting that Smith's testimony was not "relevant or applicable to whether [Warren] committed the criminal offense he's been indicted with" and that it is "really intended to inflame the jury on guilt/innocence phase, as opposed to sentencing."

There are other decisions that, when quotes are taken out of context, would suggest that no such testimony from the victim about how the crime impacted her life is admissible at the guilt/innocence stage of a trial. *See, e.g., McClenton v. State,* 167 S.W.3d 86, 92 (Tex.App.-Waco 2005, no pet.) ("The crime's after-effects on the victim is not relevant at the guilt-innocence phase."); *Garrett v. State,* 815 S.W.2d 333 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd). However, those cases are easily distinguishable from this; in those cases, there was not a question as to

whether the crime existed. In the instant matter, the post-incident impact on the child is probative of whether the assault did, indeed, occur, because Warren never formally admitted at trial that the victim had been sexually assaulted by someone (even by someone other than himself).

In none of these objections (nor at any other occasion in the trial) does Warren unequivocally concede that a sexual assault on S.E. did take place; and if there is an implication to that effect, it is so muted and so faint that the trial court or the State would be engaging in rank speculation to assume that this was Warren's intention.[2] Rather, the objections as lodged to this testimony appear limited to two possible points: (1) that the testimony belongs solely at the punishment phase and (2) that even if it were otherwise relevant on the issue of guilt or innocence, it should be disallowed because its prejudicial effect outweighs its probative value.

■ In every criminal case, the burden is on the accuser to prove three separate elements or component parts: (1) the specific kind of injury or loss, (2) that someone's criminality occasioned that injury or loss (as opposed to an accident, for instance), and (3) the identity of the person who committed the act. *Salazar v. State,* 86 S.W.3d 640, 644 (Tex.Crim.App.2002). In this case, it was the responsibility of the State to show that certain sexual acts were performed on S.E., that these sexual acts were intentionally performed, and the identity of the perpetrator(s) of the act.

Had Warren expressly acknowledged that a sexual assault on S.E. had occurred, evidence of the consequences of such an attack on the mind of S.E. would have been rendered irrelevant. However, he did not. Therefore, the post-incident impact on the behavior of S.E. was relevant evidence of the fact that the assault did, in fact, occur. *Cf. Longoria,* 148 S.W.3d at 659–60 (testimony that two juvenile victims' "[B]ehavior and long-term prognosis would have a tendency to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant committed the crimes at all.").

The testimony in this trial differs markedly from the circumstances in which an expert testifies that the post-trauma conduct of the victim tends to show that the victim is telling the truth, such as was the situation in *Sessums v. State,* 129 S.W.3d 242 (Tex.App.-Texarkana 2004, pet. ref'd). In that circumstance, the expert, having visited with the child, rendered the opinion that the child victim was being truthful. This Court ruled the testimony inadmissible. However, the testimony of S.E. and her mother as to the post-incident conduct of S.E. laid the foundation for the expert testimony of Smith, who testified that based upon her expert opinion, the self-mutilation conduct of S.E. was consistent with the conduct of other children who had suffered molestation. Smith did not venture into her opinion of the truth and veracity of S.E. The courts have repeatedly determined such expert testimony to be relevant and admissible. *Cohn v. State,* 849 S.W.2d 817 (Tex.Crim.App. 1993); *Kirkpatrick v. State,* 747 S.W.2d 833, 836 (Tex.App.-Dallas 1987, pet. ref'd).

Accordingly, we hold that the trial court could have reasonably concluded that the complained-of evidence in this case was both relevant and probative to the issue of whether Warren had engaged in the con-

---

2. During jury argument, Warren apparently continued to challenge the issue of whether the alleged sexual assault was fact or fiction. Among his statements to the jury is included,

"[I]t would be important for you to look at those records to see what the records denote as far as penetration, whether or not it actually occurred."

duct for which he was being prosecuted. It matters not that a different trial court might have, acting out of a greater (and some might argue more prudent) sense of caution, disallowed this same testimony during the guilt/innocence portion of the trial; the test for appellate review of the trial court's decision requires more—it requires a showing that the trial court's decision is outside the zone of reasonable disagreement. In Texas, caselaw supports the trial court's decision to admit the complained-of testimony, and as such, we cannot say the trial court erred. We overrule Warren's first point of error.

## ADMISSIBILITY UNDER RULE 403

■ Even after concluding that evidence is relevant and, therefore, admissible into evidence pursuant to Rule 401 of the Texas Rules of Evidence, potentially prejudicial evidence must also vault the hurdle cast by Rule 403. Rule 403 instructs that although some evidence may be relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." TEX.R. EVID. 403.

■ It is significant that Rule 403 employs the word "may," implying that a determination under this rule is inherently discretionary with the trial court. *Montgomery v. State*, 810 S.W.2d 372, 378–79 n. 7 (Tex.Crim.App.1990). A trial court, having the ability to observe and weigh the intonation and demeanor of the witnesses, is in the best position to determine the emotional reaction of the jury to that evidence. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim.App.2005).

■ A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way;

(3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 488 (Tex.Crim.App.2004).

Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. The issue is whether the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence. In making this determination, the [trial] court must assess the probative value of the proffered item as well as the harmful consequences specified in Rule 403 that might flow from its admission.

*Gigliobianco v. State*, 210 S.W.3d 637, 640–41 (Tex.Crim.App.2006).

■ Rule 403 does not exclude *all* prejudicial evidence; rather, it focuses only on the danger of "unfair" prejudice. "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged. *Mechler*, 153 S.W.3d at 440.

Having already determined that the evidence of the post-incident conduct of S.E. was admissible for the purpose of showing that the assault actually did occur, the trial court then exercised its discretion in determining whether the potential prejudice it might engender would outweigh the probative value it would provide.

Employing the abuse of discretion standard which was stated above, we determine that the admission of this evidence was not outside the zone of reasonable disagreement; therefore, the trial court did not abuse its discretion in allowing the admission of the evidence. We overrule Warren's second point of appeal.

## ELIMINATION OF THE PRESUMPTION OF INNOCENCE

In order to prevail on the claim that the actions of the trial court effectively re-

moved the presumption of innocence, Warren must first have prevailed on one of his first two points of error. Because we conclude the trial court did not err in allowing the complained-of evidence, it is unnecessary for us to address Warren's third point of error concerning the degree of harm caused by the alleged error.

For the reasons stated, we affirm the trial court's judgment.

Concurring Opinion by Justice
CARTER.

JACK CARTER, Justice, concurring.

The majority opinion finds the evidence of the self-destructive behavior of S.E. was admissible because Shawn Franklin Warren did not concede that a sexual assault occurred; since it was necessary to prove that the assault occurred, the self-destructive behavior was relevant as evidence of recent trauma. I am not convinced that there was a genuine dispute at this trial about the occurrence of a sexual assault to S.E. during this episode. Early in the State's case, Ashley Prince, the codefendant, admitted that both she and Warren sexually assaulted S.E. The cross-examination of Prince attempted to establish that only Prince sexually assaulted S.E. while Warren was asleep in another room.[3] The defense appeared to be that Warren did not participate in the sexual abuse, not that no abuse occurred. I believe that the testimony of self-mutilation is admissible, but for different reasons than presented in the majority opinion.

In *Cohn v. State*, an expert testified that children who have been sexually assaulted may show signs including depression and nervousness. The Texas Court of Crimi-

nal Appeals held that, even though these symptoms did not demonstrate sexual behaviors, expert testimony about signs of serious anxiety or post-traumatic stress disorder may still be relevant to establish that the child experienced some type of traumatic event.

[To] the extent it [the expert testimony] only provided circumstantial evidence that the children did experience *some* traumatic event, Dr. Roy's testimony, both that anxiety behavior is at least consistent with sexual abuse, and that the children here exhibited such behavior in his presence, was relevant evidence, under Tex.R.Cr.Evid., Rules 401 & 402. It should come in as substantive evidence unless "its probative value is substantially outweighed by the danger of unfair prejudice...." Tex.R.Cr.Evid., Rule 403.

849 S.W.2d 817, 819 (Tex.Crim.App.1993) (footnote omitted).

Here, an expert witness testified about symptoms experienced by children who have been sexually assaulted.[4] Smith testified that self-mutilation is a coping mechanism displayed by children who have been sexually abused if they have not been able to express verbally the intense emotional trauma the abuse causes. Further, Smith stated that the act of cutting provides the victim with an emotional release from the abuse and is very often the result of the victim having been abused and most often sexually abused.

S.E.'s mother testified about the self-mutilation. That testimony, standing alone, very well may not have provided probative evidence that S.E. suffered sexu-

---

**3.** Prince was asked by defense counsel on cross-examination: "Isn't it true that that night you and [S.E.] had a sexual encounter in the back bedroom, and my client was asleep in the master bedroom?"

**4.** No challenge is made to the qualifications of the expert or that such testimony did not meet the necessary standards.

al abuse. Generally, one reason to allow expert testimony is to connect the lay witness testimony regarding factual details to the scientific explanation for such actions. *See Williams v. State,* 895 S.W.2d 363, 366 (Tex.Crim.App.1994). Here, the expert testimony supplied the same kind of testimony that has been allowed in many other sexual abuse cases. *See Perez v. State,* 113 S.W.3d 819, 832 (Tex.App.-Austin 2003, pet. ref'd) ("Expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused is *relevant* and admissible as substantive evidence under Rule 702."); *Hitt v. State,* 53 S.W.3d 697, 707 (Tex.App.-Austin 2001, pet. ref'd). The expert testimony acts as a connection between the actions of the victim (self-mutilation) and the occurrence of a sexual assault.

Since the expert supplied the causal connection between the sexual assault and the self-mutilation, I believe the expert's testimony was admissible. Likewise, because of such connection, the mother's testimony that S.E. displayed self-mutilation became probative and admissible.

Further, Rule 403 does not require impeachment before this substantive expert evidence, which has the effect of bolstering, is admissible. *Yount v. State,* 872 S.W.2d 706, 709 (Tex.Crim.App.1993) (citing *Cohn,* 849 S.W.2d at 819).

I concur in the judgment of the court, but believe *Cohn* and its progeny supply the proper basis for admitting the disputed testimony.