In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00115-CR


______________________________




ANTONIO FREEMAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 35,995-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Antonio Freeman waived his right to a jury trial and submitted the issue of innocence or guilt
to the trial court with respect to the indictment's three counts charging sexual assault. See Tex.
Penal Code Ann. § 22.011 (Vernon Supp. 2008). The date of the alleged offenses was July 2,
2007. The trial court's cause number, which is now on appeal, was 35,995-B. The trial court found
Freeman guilty as charged in each count of the indictment and assessed his punishment at twenty
years' imprisonment. The trial court ordered that Freeman not be allowed to begin serving the
sentence assessed for these charges until he first completes serving his thirty-year sentence for a
burglary of a habitation conviction in a different Gregg County case. Freeman now appeals,
contending the trial court's "stacking" order is not supported by sufficient evidence. We affirm.

 Our law accords trial courts with a great degree of discretion in deciding whether to order
sentences to run consecutively or concurrently.

[I]n the discretion of the court, the judgment in the second and subsequent convictions may
either be that the sentence imposed or suspended shall begin when the judgment and the
sentence imposed or suspended in the preceding conviction has ceased to operate, or that the
sentence imposed or suspended shall run concurrently with the other case or cases . . . .

Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2006). "In light of the discretion granted to the
trial court by Article 42.08(a), we review a complaint about consecutive sentences for an abuse of
that discretion." Malone v. State, 163 S.W.3d 785, 803 (Tex. App.--Texarkana 2005, pet. ref'd)
(citing Macri v. State, 12 S.W.3d 505, 511 (Tex. App.--San Antonio 1999, pet. ref'd)). A trial court
abuses its discretion when it acts without reference to guiding rules or principles of law, or when it
otherwise acts outside the wide zone of reasonable disagreement. Casey v. State, 215 S.W.3d 870,
879 (Tex. Crim. App. 2007); Warren v. State, 236 S.W.3d 844, 846 (Tex. App.--Texarkana 2007,
no pet.). When it comes to cumulating sentences, the trial court must, at the time of sentencing, have
before it "both evidence of the former conviction and evidence that the defendant was the same
person previously convicted." Barela v. State, 180 S.W.3d 145, 148 (Tex. Crim. App. 2005). 

 On March 28, 2008, the State filed a motion to cumulate any sentence Freeman received in
the case now on appeal with any sentence assessed in another pending case, cause number 36,247-B
then pending in the 124th Judicial District Court of Gregg County, in which Freeman was charged
with burglary of a habitation. (1) The trial court's judgment in the case now on appeal recites that the
lower court ordered Freeman's sentence in this case (trial court cause number 35,995-B) not
commence until after Freeman first completed service of the thirty-year sentence assessed in the
burglary case (trial court cause number 36,247-B). 

 State's exhibit 9, admitted at trial without objection, is a judgment of conviction by a jury in
Gregg County cause number 36,247-B; the April 1, 2008, judgment is for a case styled "State of
Texas v. Antonio Freeman" then pending in the 124th Judicial District Court of Gregg County,
reflects a sentence of thirty years' imprisonment, and was for the crime of burglary of a habitation
alleged to have been committed August 4, 2006. 

 During trial, Freeman admitted on cross-examination that he had been convicted of burglary
of a habitation on April 1, 2008. He further admitted he received a sentence of thirty years'
imprisonment on that charge. 

 While the State did not bring forth a fingerprint expert to testify that the Antonio Freeman
then on trial in cause number 35,995-B was the same person whose fingerprints appear on the
judgment of conviction against Antonio Freeman in cause number 36,247-B, the trial court had
before it testimony from Freeman himself that he had been convicted of burglary of a habitation on
the same date of conviction that appears in the judgment for 36,247-B, and was assessed the same
sentence as appears in the judgment for 36,247-B, and was taken against a person with the same
name as the defendant in this case. We believe this evidence is sufficient to support the trial court's
finding that the Antonio Freeman being sentenced in cause number 35,995-B was the same person
previously sentenced in cause number 36,247-B. Accordingly, no abuse of discretion has been
shown. (2)


 We affirm the trial court's judgment.



 Jack Carter

 Chief Justice


Date Submitted: December 10, 2008

Date Decided: December 11, 2008


Do Not Publish



1. See Tex. Penal Code Ann. § 30.02 (Vernon 2003) (defining crime of burglary).
2. The State also suggests that the same judge presided over the trials of both 35,955-B and
36,247-B. While the judgment of conviction was out of the same court, the judgment in 36,247-B
was actually signed by the presiding judge of the 188th Judicial District Court of Gregg County,
presumably under the authority of district courts of the same geographic jurisdiction to transfer cases
amongst themselves. See Tex. Gov't Code Ann. § 24.303(a) (Vernon 2004). Thus, the record will
not support the inference that the judge who presided over the trial court of the case now on appeal
had personal knowledge of Freeman's previous conviction vis-a-vis having actually presided over
that earlier trial. Nevertheless, the trial court had ample additional evidence with which to connect
Freeman to that other conviction.


aken alone, is greatly outweighed by
contrary proof.

Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
            Addressing separately the two methods of determining whether evidence supporting the jury's
verdict was factually insufficient, we first direct our attention to Kevin's claim that the State's
evidence was too weak to establish the identity element of the charged offense. As Jack was the only
eyewitness, the State necessarily relied on his statements and testimony that Kevin was his principal
assailant. It is well established that a conviction may be based on the testimony of a single
eyewitness, Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); Pitte v. State, 102 S.W.3d
786, 794 (Tex. App.—Texarkana 2003, no pet.); however, Kevin contends no jury could have
reasonably relied on Jack's factually inconsistent account of the attack or identification of his
attacker. 
            Without directly raising the issue of Jack's competency at trial or on appeal, Kevin makes
repeated references to Jack's mental retardation, suggesting that this, when viewed in conjunction
with all of the evidence, diminishes his credibility to the point that it is simply too weak to support
his identification of Kevin as his attacker. Kevin argues that even the testimony of those witnesses
asked to offer an opinion about Jack's truthfulness qualified their appraisals of him as a truthful
person by saying he also has a tendency to exaggerate and fantasize. Kevin's position is that this
tendency to fantasize is only emphasized by Jack's own testimony that his so-called truck "is as real
as she can be." 
            Taking Jack's mental retardation into account, however, the trial court required him to be
qualified before he was permitted to testify for the State. It is well within the discretion of the trial
court to determine a witness' competency, and the court's ruling on the matter will not be disturbed
absent an abuse of discretion. Avila v. State, No. 74,142, 2003 Tex. Crim. App. LEXIS 142, at *26
(Tex. Crim. App. July 2, 2003).
[T]here are three elements which must be considered in determining whether a
witness is in fact competent to testify. The first is a capacity to observe intelligently
at the time of the events in question. The other elements of capacity are recollection
and narration, though the former is usually merged into the latter. The capacity to
narrate involves on the one hand, both an ability to understand the questions asked
and to frame intelligent answers and, on the other hand, a moral responsibility to tell
the truth. If a person afflicted with a physical or mental disability possesses
sufficient intelligence to receive correct impressions of events he sees, retains clear
recollection of them and is able to communicate them through some means there is
no reason for rejecting his testimony.

Watson v. State, 596 S.W.2d 867, 870–71 (Tex. Crim. App. 1980) (citations omitted). Responding
to the trial court's questioning, Jack provided his full name, testified he knew the difference between
lying and telling the truth, answered correctly all of the court's hypothetical questions, and said he
knew he had given an oath to tell the truth and someone who fails to tell the truth can get in serious
trouble. The court, finding no reason to reject his testimony, allowed the trial to proceed. 
 
            Kevin focuses the greater part of his argument on Jack's inconsistent statements throughout
the process of identifying his attacker—including discrepancies in Jack's initial complaint,
statements to his guardians and friends, and identification of Kevin in a photographic lineup and at
trial. He notes, for example, that in Jack's initial complaint two days after the assault, he provided
police with the name "Kevin Lewis" and described Kevin as having dreadlocks and green eyes; at
trial, Jack testified that Kevin was known to him only as "K.T.," that he was unable to describe
dreadlocks, and that Kevin's eyes were brown. Kevin also points to the fact that, although earlier
testimony by law enforcement personnel indicated Jack both identified Kevin in a photographic
lineup and signed his initials next to Kevin's photograph, Jack agreed that he identified Kevin in the
photographic lineup, but denied having signed his initials, claiming that someone else must have
done so. 
            Regardless of any inconsistent statements as to the details of the offense, such discrepancies
reflect on a witness' credibility, a matter singularly within the purview of the fact-finder. The jury
heard evidence as to Jack's mental retardation, the process by which he identified Kevin, and
evidence suggesting numerous flaws and inconsistencies with Jack's identification of Kevin. The
jury, having had the opportunity to observe firsthand Jack's demeanor, as well as his ability to
respond to questioning and to recall information about his assault, ultimately chose to accept his
testimony over the evidence presented by the defense. "The jurors are the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given their testimony" and are entitled,
therefore, to believe or disbelieve all or any part of a witness' testimony. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981). After carefully reviewing all of the evidence both for and
against the finding, we cannot say the State's evidence identifying Kevin as Jack's assailant is so
weak as to undermine our confidence in the jury's determination of guilt. See Johnson, 23 S.W.3d
at 11.
            The next question we must consider is whether the evidence supporting the conviction is
greatly outweighed by contrary proof. Id. Comparing the facts in this case to the facts in Johnson,
Kevin contends the accuracy of Jack's identification was questionable because of the existence of
adverse conditions. The Johnson court reasoned that, because the victim in that case only managed
a brief and obstructed nighttime view of her attacker's face while bright headlights were shining in
her eyes, the accuracy of her "in-court identification could not shoulder sufficient reliability to
establish beyond a reasonable doubt that appellant carried out the assault." Id. at 12. The current
case contrasts with Johnson in that Jack was attacked in the middle of the day, did not have an
obstructed view, and recognized his attacker as someone with whom he was already acquainted.
            The adverse conditions to which Kevin apparently refers are those previously addressed;
namely, what Kevin describes as Jack's propensity to fantasize and make up stories, embellish, and
even lie, in addition to the fact that he functions at the level of a five- or six-year-old child. The
comparison between Johnson and the present situation, however, is unwarranted because the factors
Kevin urges this Court to consider are questions of competency and credibility rather than indicators 
of factual insufficiency—questions appropriately resolved by the trial court and the jury,
respectively.
            In addition to detailing the discrepancies in Jack's testimony and questioning the accuracy
of the identification of his attacker, Kevin also directs our attention to facts suggesting that an assault
may not even have occurred. He urges, as an alternative theory, that Jack may have been involved
in some sort of accident in which he damaged his wheelbarrow and sustained bodily injuries. After
all, the police officer, noting the abrasions, bruising, scratches, and swelling on Jack's back and rib
cage indicated the possibility that such injuries could have been caused from being rubbed against
a rock. Kevin also introduced evidence the chrome smoke stacks might not have been broken by
attackers as Jack claimed but, instead, at least one of the stacks may have been intentionally removed
with a hacksaw. Such evidence, although supportive of Kevin's alternative theory, is not itself
conclusive and certainly does not rise to the level of greatly outweighing or overshadowing the
evidence presented by the State.
Character Evidence
            In his second point of error, Kevin argues the trial court erred in refusing to admit character
evidence concerning Jack's ability to distinguish between reality and fantasy. Without citing the case
in response to any of the State's trial objections, Kevin now relies exclusively on Schutz v. State, 957
S.W.2d 52 (Tex. Crim. App. 1997), in support of his position that he should have been allowed to
introduce both general and specific character evidence through the State's expert. In Schutz, the
Texas Court of Criminal Appeals recognized that society may view certain witnesses, including
children and mentally retarded persons, as "impaired," viewing with suspicion the competency of
a class of people to testify because of a condition or disability embodied by that class. Id. at 70. The
court went on to state that[w]hen an "impaired" witness or declarant is expected to testify, expert testimony
should be permitted in the offering party's case-in-chief concerning the ability of the
class of persons suffering the "impairment" to distinguish reality from fantasy and to
perceive, remember, and relate the kinds of events at issue in the case.
Id. For this reason, Kevin claims the trial court erred when it sustained the State's objection to his
attempt to elicit character evidence from the State's expert.
            The record clearly indicates, however, that although Kevin did attempt to ask some questions
regarding the general characteristics of mentally retarded people, which he was entitled to do in this
situation, his questions were designed to delve into characteristics specific to Jack. In a hearing
outside the presence of the jury, Kevin's trial attorney stated: "Your Honor, what I think that we're
getting into are not only general characteristics of individuals that have been diagnosed similar to
Mr. Diaz, but also specific characteristics of this individual about his trustworthiness, his ability to
decipher between fantasy and reality, truthfulness, [and] untruthfulness." The difficulty with
maintaining this position is that Schutz itself limits evidence admitted under the impaired witness
theory "to a discussion of the class rather than the individual witness and should focus on the ability
of the class to accurately perceive, remember" and relate the kinds of events at issue in the case,
"rather than any tendency to do so." Id.
            The specific information Kevin attempted to introduce into evidence was contained in the
report on which the State's expert based his opinion. The report, however, was approximately nine
years old, and the expert used only the part of the report dealing with intelligence testing to
determine whether Jack was mentally retarded—not the part Kevin was interested in exploring. The
trial court found that the expert had no personal knowledge of the making of the report and that the
information contained in the remaining portion of the report appeared to be, not a review of Jack
himself, but a review of what other people had concluded about him. In other words, the court found
that the report, outside of the intelligence testing used to determine whether Jack was mentally
disabled, was based on the single, double, or even triple recall of people who observed him nine
years earlier. Even so, the court permitted Kevin to ask about the functional age level corresponding
to Jack's intelligence testing scores and, even though the expert stated he had no opinion as to Jack's
ability to distinguish between reality and fantasy, Kevin managed to get him to admit that, according
to the report, there had apparently been issues in this area in the past. 
            The real question here is whether the trial court committed reversible error when it refused
to allow Kevin to question the State's expert regarding the general ability of mentally retarded
persons to distinguish reality from fantasy. We will review a trial court's decision to exclude
evidence under an abuse of discretion standard, Salazar v. State, 38 S.W.3d 141, 153–54 (Tex. Crim.
App. 2001); however, to preserve such a complaint for appellate review, the complaining party "must
bring forward a record indicating the nature of the evidence" and, "[i]f the excluded evidence is not
apparent from the context of the record, it must be brought forward either  through  a  timely  offer
 of  proof  or  a  formal  bill  of  exception,"  Haygood  v.  State,  No. 04-02-00685-CR, 2003 Tex. 
App. LEXIS 9562, at *14 (Tex. App.—San Antonio Nov. 12, 2003, no pet. h.) (citing Tex. R. App.
P. 33.1, 33.2; Tex. R. Evid. 103(a)(2)).
 
            "When . . . there is no bill of exception or offer of proof to show the facts the defendant could
have proved through cross-examination of an adverse witness, the issue has not been preserved for
appellate review." Jenkins v. State, 948 S.W.2d 769, 775 (Tex. App.—San Antonio 1997, pet. ref'd)
(citing Love v. State, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993)). In this case, although Kevin's
trial attorney stated she wanted to get the expert's opinion as to the general ability of mentally
retarded persons to distinguish between reality and fantasy, the record is devoid of any showing of
what the expert's testimony would have been. The evidence contained in the excluded portion of the
report on which the State's expert relied provided an assessment, not of the general ability of
mentally retarded persons to distinguish between reality and fantasy, but of the specific findings of
Jack's 1992 evaluation. Absent an offer of a statement concerning what the excluded evidence
would show as to the ability of mentally retarded persons in general, nothing is presented for our
review. Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).
Newly Discovered Evidence
            In his third point of error, Kevin contends the trial court erroneously denied his motion for
new trial based on newly discovered evidence. Not only does the decision to grant or deny such a
motion fall within the sound discretion of the trial court, subject to reversal only on a finding of an
abuse of that discretion, Kevin v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995), but these motions
are generally disfavored by the courts and viewed with great caution, Drew v. State, 743 S.W.2d 207,
225 (Tex. Crim. App. 1987). A trial court does not abuse its discretion in denying a motion for new
trial unless the record demonstrates that (1) the newly discovered evidence was unknown at the time
of trial; (2) the failure to discover the new evidence was not due to a lack of diligence; (3) the new
evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4)
the new evidence is probably true and will probably bring about a different result in a new trial. 
Wallace v. State, 106 S.W.3d 103, 107–08 (Tex. Crim. App. 2003) (citing Tex. Code Crim. Proc.
Ann. art. 40.001 (Vernon Supp. 2004)).
            The newly discovered evidence presented in Kevin's motion for new trial is embodied in the
affidavits of two individuals approached by Jack after he was attacked, but before he went to the
police to make his initial complaint. The significance of the affiants' statements apparently lies in
their claim that Jack told them he had been attacked, but failed to name his attacker, and that he
believed the three men were from Commerce, Texas, and had been driving a red Camaro. Contrary
to Kevin's contention, however, the affidavits contain nothing more than cumulative evidence
designed to impeach Jack by suggesting further confusion and inconsistency in his recollection of
the April 19 attack—a point clearly demonstrated at trial. The affidavits simply offer no new
information, making it highly unlikely the admission of this evidence would have led the jury to
reach a different result.
Conclusion
            Having determined that the State's evidence identifying Kevin as Jack's principal assailant
is factually sufficient, that Kevin waived any error as to the admissibility of general character 
 
 
evidence relating to an "impaired" witness' class, and that the trial court did not abuse its discretion
in denying Kevin's motion for new trial, we affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 18, 2003
Date Decided:             January 7, 2004

Publish