# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00261-CR

**Cleo Ramon Roach, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-19-215008, THE HONORABLE MICHAEL E. DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Cleo Ramon Roach appeals his misdemeanor assault family violence conviction on sufficiency, evidentiary, and ineffective assistance of counsel grounds. We affirm.

## BACKGROUND

Roach's jury was presented with two competing versions of events: one from Roach's on-and-off girlfriend Deshae Clayborne-Green (the complainant in this case), and the other from his longtime friend Fredrick Parks. Both have Clayborne-Green falling onto a piece of furniture (alternatively referred to as a bookshelf, bookcase, or shoe rack). The fall caused a large cut on Clayborne-Green's forehead. Clayborne-Green testified the fall was Roach's fault; Parks testified it was her fault.

According to Clayborne-Green, Roach came home from work with Parks just as she was finishing up her hair extensions, a six-hour process, "in the living room, kitchen area."

Roach became upset that she was not fixing her hair in the bathroom, called her "a trifling bitch," and said "it was disgusting" to be doing her hair in the kitchen area. She tried to explain that because it was a long process, she wanted to watch TV. Because Roach appeared upset, she started gathering her stuff to leave; she had only been living there "a month maybe." She heard Roach talking on the phone to his sister Ebony Johnson. Then, Roach started throwing her stuff—her backpack, phone, and credit cards—outside. Then Roach walked up and grabbed her.

> When I was coming out of the room and he grabbed me, he had me off the floor kind of like underneath his arm and we fell into the bookshelf that was in the hallway area, and my face hit the edge of the bookshelf. And so I was -- the room was -- like it was spinning, like, I couldn't stand up. I was -- I was literally dazed.

The fall caused a V-shaped mark in the middle of her forehead, and it "hurt." Parks did not physically intervene but told Roach to stop and to just let her get up and leave on her own. But Roach proceeded to drag her from the hallway through the living room and pushed her outside the front door, closing the door behind her. Although it was December and rainy and cold, she had on only a shirt and shorts and was barefoot. She started walking down the street to find help, but no one would help her, so she walked back to the house to retrieve her things.

Simultaneously, Johnson pulled up in her vehicle, got out, and walked into the house. Johnson then came back outside and started punching Clayborne-Green in the face. Roach and Parks were outside watching but did not intervene. It was a one-way fight as Clayborne-Green could not hit Johnson back. Roach, Parks, and Johnson then went back inside. Clayborne-Green called 911 and reported that she and her boyfriend (whom she would not name) had gotten in a fight and that she needed help to retrieve her things. She did not want to get Roach in trouble even though she had been "assaulted and thrown out of the house and pushed out the front door."

According to Parks, Roach never laid hands on Clayborne-Green. Parks explained that he came from midnight bingo to Roach's house to play chess, but Roach never got the chess board out. Roach was distracted, asking Clayborne-Green to get her hair extensions off the table because if she did not his mother "would kick us out, everybody gotta go." Clayborne-Green responded, "f--- your mama." Roach repeatedly asked Clayborne-Green to leave. Parks told Roach to "chill out." Clayborne-Green had a liquor bottle and told Roach that she would hit him in the head with it. Then Johnson came to the front door, and Clayborne-Green tripped over the "shoe rack" trying to get out. "Cleo was trying to stop her from going outside." Clayborne-Green ran out the door, and "Her and Cleo's sister started fighting." He could hear them fighting.

Austin Police Officer Travis Jobes testified that when he arrived at the scene and interviewed Clayborne-Green, she was crying, distraught, and out of breath. "She didn't have any shoes on and it was, like, raining that day." And "she also had several injuries on her face that I noted. There was a cut on her forehead that had swelling around it. There was one on her nose. Her eyes appeared to be swollen and her bottom lip appeared to be swollen." He took photos of the injuries, which were admitted into evidence. Clayborne-Green told Officer Jobes that "she was in an argument with her boyfriend and during the argument he had thrown her into a wooden shoe rack that was in the hallway, that it caused her to -- the injuries to her face and her lip." The injuries to her eyes were caused by Johnson in the separate altercation. Paramedic Danielle Montana described a depression marking to the top of Clayborne-Green's forehead and mass swelling to her face. Clayborne-Green told her the injuries were caused when "she was jumped by a male and a female subject" and "struck with a closed fist by male and female subjects and pushed into a bookcase and dragged outside by her boyfriend." EMS took Clayborne-Green to the hospital.

3

Officers arrested Roach for assault family violence. The jury credited Clayborne-Green's version of the facts over Parks's and convicted Roach of Assault Bodily Injury Family Violence. Neither party presented any additional evidence or testimony during the punishment phase. The trial court assessed punishment at 45 days probated for one year, with a $200 fine also probated. Roach appeals.

**SUFFICIENCY**

Roach argues that the State failed to establish that he acted with the requisite state of mind or that he caused the injuries to Clayborne-Green's face. Roach does not challenge the State's evidence that Clayborne-Green was a family member or a household member or an individual with whom he had a dating relationship.

*Applicable Law and Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (19797). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view *all* of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S .W.3d 750, 759 n.8 (Tex. Crim. App. 2016). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the

4

factfinder does not act rationally." *Id.* This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Application*

A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another[.]" Tex. Penal Code § 22.01(a)(1). Assault is a result-oriented offense; "there must be an injury." *Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015). Bodily injury can mean "physical pain." Tex. Penal Code § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). And a person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c). Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). For sufficiency challenges, the issue is whether "given all the circumstances," the jury could reasonably infer that the defendant had the requisite mental state. *Id.* at 95.

Here, to convict Roach of Class A misdemeanor assault, the jury had to determine beyond a reasonable doubt that Roach, with the requisite mental state, caused bodily injury to Clayborne-Green by pushing her on and about the torso with his hand and seizing her on and about the torso with his hand.

Roach argues that Clayborne-Green's testimony—that they "fell together" in the hallway, that she took "the brunt of the fall" because he fell on her and she fell into the furniture, and that she did not know if "he lost his balance or what"—does not support a conclusion beyond a reasonable doubt that Roach acted with even recklessness or caused any injury. According to Roach, the evidence did not show that Roach "understood that picking Ms. Clayborne-Green up would cause them both to fall, and thereby cause bodily injury to her forehead." Rather, it shows that the bodily injury Clayborne-Green sustained from the fall was caused by accident, and the rest of Clayborne-Green's injuries were inflicted by Johnson.

But we must view all the evidence in the light most favorable to the verdict, *Jackson*, 443 U.S. at 318–19, and other evidence supported a conclusion that Roach acted at least knowingly or recklessly. Clayborne-Green described Roach's actions as an assault at trial (she "was assaulted and thrown out of the house and pushed out the front door"; she felt "brutalized" and "betrayed"; and she "didn't have to be assaulted by either one of them"). She also acknowledged that she did not tell the 911 operator who had beaten her up because she did not want to get Roach in trouble.

Officer Jobes testified that Clayborne-Green told him Roach grabbed her by her shirt and tossed her around the house, threw her into the furniture that was in the hallway causing injuries to her face and her lip, and threw her outside. Paramedic Montana testified that Clayborne-Green told her that her boyfriend pushed her into the furniture and dragged her outside. Finally, the jury was shown two photos, one of which focuses on the large V shaped cut that resulted from Clayborne-Green's head hitting the edge of the furniture.

Considering the above, we hold the jury could have reasonably inferred from the force in Roach's conduct that he was either aware that his conduct was reasonably certain to

6

cause her physical pain or that he was aware of but consciously disregarded a substantial and unjustifiable risk that physical pain would occur. *Cf. Hill v. State*, 392 S.W.3d 850, 854 (Tex. App.–Amarillo 2013, pet. ref'd) (concluding that jury could have found appellant struck girlfriend with his hand and thus intentionally, knowingly, or recklessly caused bodily injury, based on complainant's testimony, police officer's description of injuries, and photographs of injuries). As the Court of Criminal Appeals has noted, "proof of bodily injury is not dependent upon the severity of the 'violence' used, so long as some resulting 'physical pain, illness, or any impairment of physical condition' can be identified." *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). Therefore, the "threshold of proof necessary to support a jury finding of an awareness that such a result is reasonably certain to occur is concomitantly low." *Id.* Finding the evidence sufficient under *Jackson*, 443 U.S. at 319, we overrule Roach's sufficiency complaint.

**EVIDENCE**

Roach next argues the trial court erred in admitting 1) the two photographs depicting Clayborne-Green's injuries; 2) Clayborne-Green's testimony about how she felt, how the assault had affected her, and why she chose to testify; and 3) Parks's prior convictions.

*Applicable Law and Standard of Review*

We review a trial court's ruling under the rules of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

7

*Application*

1. *The trial court did not abuse its discretion in admitting two photographs over Roach's Rule 403 objection.*

The trial court admitted the two photographs depicting Clayborne-Green's injuries over Roach's objection that admission would confuse the jury given that Clayborne-Green's injuries were allegedly caused by two assaults and that "we don't know what injury is from whom." Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "This rule favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id.*

On appeal, Roach argues that "the photographs presented to the jury showed, at best, a V-shaped mark on [Clayborne-Green's] forehead caused as a result of an accidental falling into a bookshelf." "The remaining injuries were not alleged to have been caused by Mr. Roach" and therefore the photographs misled "the jury into believing more injuries were attributable to Mr. Roach than were supported by the testimony offered at trial." And "the depiction of these additional injuries played on the jury's sympathies for the complaining witness and, as such, suggested a decision on an improper basis to the detriment of Mr. Roach."

The trial court did not abuse its discretion in admitting the evidence over the Rule 403 objection. "Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible." *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim.

App. 2007). "A visual image of the injuries appellant inflicted on the victim is evidence that is relevant to the jury's determination." *Id*. And the evidence presented little danger of unfair prejudice. The dominant injury in both photos is the cut to the forehead, and there was no testimony that Johnson was responsible for that injury rather than Roach. The jury heard the prosecutor state in opening statement that Clayborne-Green was assaulted twice, once by Roach and then by his sister and that the sister "actually inflict[ed] more injuries than the defendant did." When finding the photographs admissible, the trial court explained to the parties that, "If there's something that's on there that doesn't come from this assault, both sides are going to have to explain that." And Officer Jobes, who took the photos at the hospital shortly after the assault, testified that Clayborne-Green told her the injuries to her face and her lip were from hitting the shoe rack while the injuries to her eyes were caused by Johnson. Because the jury was given an explanation as to the sources of Clayborne-Green's various injuries it was unlikely to infer that Roach was responsible for the Johnson-inflicted injuries and base its verdict on an improper basis. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006) (unfair prejudice "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

Second, for the same reasons, the evidence was not misleading. The photos reflected the very injuries Clayborne-Green testified were inflicted by Roach and Johnson. And the jury was well-equipped to judge the evidence's probative force given the opening statement and testimony attributing specific injures to Roach and to Johnson. *Id.* (misleading the jury "refers to a tendency of an item of evidence to be given undue weight . . . on other than emotional grounds"). The trial court could have reasonably concluded that the probative value of the two photographs was not substantially outweighed by the countervailing factors Roach relies on.

9

Therefore, the trial court did not abuse its discretion in admitting the photographs and we overrule Roach's objection.

   2. *The trial court did not abuse its discretion in allowing Clayborne-Green to testify—as to the effect of the assault and why she was testifying—over Roach's Rule 402 objections.*

Over relevance objections to the questions, the jury heard the following testimony from Clayborne-Green:

> Q    How did it make you feel that he did this to you?
>
> A    How I felt?  I felt brutalized.  I felt betrayed.  I felt like none of this had to happen.  I mean, I could have just left.  I should have been able to leave on my own.
>
>      . . . .
>
> Q    And since the incident, how has it affected you?
>
> A    How it's affected me?  I don't go to certain areas in Austin anymore.  I don't even go to my parents' house, and they live down the street from him.  I have moved.  I have changed my number.  I look over my shoulder.  I'm scared.
>
>      . . . .
>
> Q    Deshae, why are you testifying here today?
>
> A    You said why am I here today?  Because I didn't have to be assaulted by either one of them.  If you want to leave, you should be able to and no harm should come to you.  I didn't have to be assaulted that night.  I could have left.  I said that from the time that this happened.  I even said I could have left and none of us would be sitting here today.

Rule 401 provides, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401.  Rule 402 provides, "Relevant evidence is admissible unless any of the following provides otherwise: the United States or Texas Constitution; a statute;

10

these rules; or other rules prescribed under statutory authority. Irrelevant evidence is not admissible." *Id*. R. 402.

On appeal, Roach argues that these responses were irrelevant and unfairly prejudicial. Although Roach preserved his Rule 402 relevance objection, Roach forfeited his complaint under Rule 403 by not raising that objection in the trial court. Tex. R. App. P. 33.1(a).

At the guilt/innocence phase of a trial, evidence of the complainant's psychological trauma from an assault is probative only of the occurrence of the assault; if the defense concedes that the complainant was assaulted by somebody, evidence of trauma is inadmissible. *Brown v. State*, 757 S.W.2d 739, 740-41 (Tex. Crim. App. 1988). In *Brown*, the defendant conceded the complainant had been raped but presented an alibi defense. *Id*. at 740. In such a case, evidence of the complainant's emotional difficulty after the assault "would not alter the probability it occurred because that was not disputed." *Id*. But if the defendant contests that an offense did occur in the first place, then the subsequent adverse reaction of the complainant to the occurrence is relevant to show the fact of the occurrence. *Warren v. State*, 236 S.W.3d 844, 847 (Tex. App.— Texarkana 2007, no pet.). Here, Roach did not contest that Clayborne-Green was assaulted by Johnson. But Roach did contest that the cut to Clayborne-Green's forehead was caused by an assault. Parks testified that she tripped over the shoe rack on her own while Roach was standing at the door. Given the fact issue about whether the cut to the forehead was the result of a perpetuated crime, the trial court did not abuse its discretion in determining that Clayborne-Green's testimony was relevant. *See id*. We therefore conclude that the trial court did not abuse its discretion in admitting the evidence over Roach's objection.

11

*3. Roach waived his Rule 609 complaint with an untimely objection.*

Prior to trial, the Defense timely requested written notice of the State's intent to use evidence of any prior conviction for the purpose of attacking the credibility of witnesses under Texas Rule of Evidence 609. Parks was on both parties' witness lists, and according to the State's discovery log, the State provided a copy of Parks's criminal history prior to trial. On cross-examination, the State had the following exchange with Parks:

Q.      Are you the same Fredrick Parks who was convicted of aggravated robbery and sentenced to 15 years here in this county?

A.      Yes, sir.

DEFENSE COUNSEL: Objection. Can we approach?

THE COURT: Why?

DEFENSE COUNSEL: Your Honor, I asked for notice on any priors on witnesses.

THE COURT: Overruled. The jury has heard the answer. Please proceed.

Q.      And the same Fredrick Parks who was convicted of forgery and sentenced to 10 years here in Travis County as well?

A.      Yes, sir.

Q.      Okay. I had to get that out of the way.

Rule 609 governs impeachment by Evidence of a Criminal Conviction. It conditions admissibility on notice. Subsection (f) provides: "Evidence of a witness's conviction is not admissible under this rule if, after receiving from the adverse party a timely written request specifying the witness, the proponent of the conviction fails to provide sufficient written notice of intent to use the conviction. Notice is sufficient if it provides a fair opportunity to contest the use of such evidence." Tex. R. Evid. 609(f).

12

On appeal, Roach argues that the trial court erred in admitting Parks's prior convictions because the State did not give the required notice and used the convictions to "tear down the credibility of their sole witness." In response, the State contends that it provided notice through discovery and that the Defense waived this issue with an untimely objection.

"If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008). And "defense counsel must object every time allegedly inadmissible evidence is offered." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

Roach's objection to Parks's testimony about the aggravated robbery conviction was untimely because it was made after the question was asked and answered. *Luna*, 268 S.W.3d at 604. And Roach did not object anew when the prosecutor asked Parks about his forgery conviction. *Hudson*, 675 S.W.2d at 511. Under these circumstances, Roach failed to preserve this issue.

We overrule Roach's evidentiary complaints because the trial court either did not abuse its discretion, *see Montgomery*, 810 S.W.2d at 391, or error was not preserved.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Roach argues that counsel's repeated failure to object to 1) inadmissible evidence and 2) objectionable argument constituted ineffective assistance of counsel.

*Applicable Law and Standard of Review*

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that counsel's performance was deficient, and he suffered prejudice because of that

deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Prejudice exists if an appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id.* at 813. "Claims of ineffective assistance must be firmly rooted in the record." *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023).

On direct appeal, there is a "substantial risk of failure" when raising ineffective assistance of counsel because in most cases, "the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813–14. If trial counsel has not had the chance to explain the reasons for his conduct, an appellate court "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

*Application*

1. *The silent record does not support that trial counsel's failure to object to certain hearsay and opinion testimony that bolstered[1] Clayborne-Green's testimony—on relevance, Rule 403, and hearsay grounds—constitutes ineffective assistance of counsel.*

Roach argues that trial counsel's failures to object to the testimony bolstering the "otherwise unreliable complaining witness" on relevance, Rule 403, and hearsay grounds

---

[1] *See Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) ("bolstering" objection may not preserve error; objections based on the rules of evidence will).

constituted deficient performance. Roach specifically points to Officer Jobes's and Paramedic Montana's testimony about what Clayborne-Green said to them when they responded to the scene, Officer Jobes's opinion testimony that she was telling the truth, and Clayborne-Green's testimony about what the people down the street who refused to help her told her.

To show ineffective assistance of counsel for the failure to object during trial, the appellant must show that the trial court would have committed error in overruling the objection. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

**Officer Jobes's testimony about Clayborne-Green's statements and credibility.**

Roach complains about counsel's failure to object to Officer Jobes's testimony that Clayborne-Green stated she "was in an argument with her boyfriend and during the argument he had thrown her into a wooden shoe rack that was in the hallway, that it caused her to -- the injuries to her face and her lip" and that he found Clayborne-Green credible. Officer Jobes's testimony about what Clayborne-Green said related Clayborne-Green's excited utterance—"A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). Such a statement is an exception to the hearsay rule. *Id*. Here, Officer Jobes testified that Clayborne-Green was crying, distraught, and out of breath when he arrived. Thus, she was still dominated by the emotions, excitement, fear, or pain of the event or condition. *See Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005). The trial court would not have committed error in overruling a hearsay objection. *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003); *see also Ex parte White*, 160 S.W.3d at 53. And, given that the hearsay exceptions provided for in Rule 803 reflect a determination that the dangers

of hearsay are either absent or minimal, *Walter v. State*, 267 S.W.3d 883, 889 (Tex. Crim. App. 2008), the trial court would have not erred in overruling a Rule 402 or 403 objection.

On the other hand, the State's questioning about Officer Jobes's opinion about Clayborne-Green's credibility was objectionable. "Neither expert witnesses nor lay witnesses may testify to the truthfulness of a witness's testimony." *Tharp v. State*, No. 03-23-00102-CR, ___ S.W.3d ___, 2024 WL 2309211, at *14 (Tex. App.—Austin 2024, no pet.). And, by expressing his opinion that Roach was not fabricating her allegations, Officer Jobes provided an inadmissible opinion as to Roach's truthfulness. *Id.* The record is silent as to why trial counsel did not object, and an appellant usually cannot meet his burden under the first prong of *Strickland* in those circumstances. *See Lopez v. State*, 343 S.W.3d 137, 143–44 (Tex. Crim. App. 2011); *Thompson*, 9 S.W.3d at 813–14. Even if Roach had met the first prong of *Strickland*, we do not find prejudice here, where: a juror could reasonably infer, from Officer Jobes's arrest of Roach, that Officer Jobes believed Clayborne-Green's account; the State did not emphasize or mention Officer Jobes's answer in its closing argument but emphasized to the jurors that they were the judges of credibility of the witnesses; the trial court instructed the jurors that they were "the exclusive judges of the facts proven, of the credibility of the witnesses, and of the weight to be given to their testimony"; and considerable evidence, as discussed above, supported the verdict. *See Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). Under these circumstances we cannot conclude that counsel's failure to object prejudiced Roach.

**Paramedic Montana's testimony about Clayborne-Green's statements.**

Roach complains about counsel's failure to object to Paramedic Montana's testimony that Clayborne-Green stated she "was involved in a physical altercation where she

16

claims she was jumped by a male and a female subject. She states she was struck with a closed fist by male and female subjects and pushed into a bookcase and dragged outside by her boyfriend." This testimony related Clayborne-Green's Statement Made for Medical Diagnosis or Treatment—"A statement that: (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). Such a statement is an exception to the hearsay rule. *Id*. Paramedic Montana testified from her report, itself admissible as a business record under Rule 803(6). And again, the Rule 803 exceptions carry independent, circumstantial guarantees of trustworthiness, *Walter*, 267 S.W.3d at 889, meaning that the trial court would have not erred in overruling a Rule 402 or 403 objection. *See Munoz v. State*, 288 S.W.3d 55, 58 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("Rule 803(4) is premised on the declarant's desire to receive an appropriate medical diagnosis or treatment, and the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided.").

**Clayborne-Green's testimony about her neighbors' comments.**

Roach next complains about counsel's failure to object to Clayborne-Green's testimony that when she walked down the street for help, "the people that I approached to call the police . . . flat out told me they weren't going to help me." Counsel may not have objected to this statement on hearsay grounds because it was not obviously offered for its truth—to show that people refused to help her—but rather to show the effect on the listener. *See* Rule 801(d) (defining hearsay); *McNeil v. State*, 452 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (statements offered only to show their effect on listener are not hearsay). Clayborne-Green had

17

already told the jury that the people she saw "were reluctant to help me." This strand of testimony was relevant because it explained why she came back to the house, where she had been assaulted, to retrieve her phone to call for help.

Because the trial court would not have erred by overruling hearsay or relevance objections to most of the above testimony, or the admission of the testimony without objection did not prejudice Roach, Roach's trial attorney was not ineffective for failing to make those objections. *See Ex parte White*, 160 S.W.3d at 53; *Cook,* 665 S.W.3d at 599.

Having disposed of Roach's complaints about counsel's failure to object to the admission of certain evidence, we turn to those directed at counsel's failure to object to certain argument to the trial court.

2. *The silent record does not support that trial counsel's failure to object to certain argument constitutes ineffective assistance of counsel.*

Roach argues that failing to object to several arguments made by the State during the sentencing hearing, including: that it thought that Clayborne-Green testified truthfully, that Roach failed to take responsibility for his actions, and that the Defense called Parks, a liar, as a witness, amounted to ineffective assistance.

To successfully argue that trial counsel's failure to object to the State's argument amounted to ineffective assistance, Roach must show that the trial judge would have committed error in overruling such an objection. *See Compton v. State*, 666 S.W.3d 685, 731 (Tex. Crim. App. 2023), *cert. denied*, 144 S. Ct. 916 (2024). Acceptable jury arguments include (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to opposing counsel's arguments; or (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

18

**The State's argument about Clayborne-Green's credibility.**

Roach first complains about counsel's failure to object to the State's argument—"You heard her on the stand her testify how terrified she was, how much this has affected her, we believe credibly[.]"—vouching for the credibility of Clayborne-Green. *See Mosley v. State*, 666 S.W.3d 670, 674 (Tex. Crim. App. 2023) (prosecutor may not inject personal opinion of a witness's credibility during closing argument). This argument was responsive to defense counsel's arguments made at guilt-innocence, including that "the evidence has shown that the complaining witness falsely accused Cleo of assaulting her because she was upset about the fight with Ebony and being kicked out of Cleo's house." A prosecutor may argue the credibility of a witness if the argument was invited by and is responsive to defense counsel's arguments. *Chapman v. State*, 503 S.W.2d 237, 238 (Tex. Crim. App. 1974); *Thomas v. State*, 445 S.W.3d 201, 211 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Accordingly, the trial court would not have erred by overruling the objection. *Freeman v. State*, 340 S.W.3d at 727.

**The State's argument that Roach has not taken responsibility for his actions.**

Roach next complains about counsel's failure to object to the State's argument that it was "clear from the incident and the events of the trial that the defendant to this day has not taken responsibility for his actions as part of the incident." A criminal defendant has a Fifth Amendment privilege against self-incrimination, so this argument could be considered a comment on Roach's silence and was potentially objectionable on that ground. But such an argument is not necessarily a comment on the defendant's failure to testify or, as Roach contends here, on a lack of remorse; it can be a summation of the evidence. *See Randolph v. State*, 353 S.W.3d 887, 895 (Tex. Crim. App. 2011) (argument, which did not mention remorse, permissible as summation

where defendant testified to alibi defense at guilt-innocence but did not testify at punishment). Here, Roach did not testify at all but put on evidence that Johnson's assault and Clayborne-Green's accident caused Clayborne-Green's injuries. The prosecutor made the above comment while referencing that testimony. Given that the comment was not a direct comment on Roach's failure to testify, it is possible counsel chose not to object based on reasonable trial strategy. Counsel may have concluded that the language used was not manifestly intended or was not of such a character that the trial court would necessarily and naturally take it as a comment on Roach's failure to testify. *Id.* at 891. Regardless, we will not "declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions— whether those actions were of strategic design or the result of negligent conduct." *Thompson*, 9 S.W.3d at 814.

**The State's argument critical of the defense's decision to call witness Parks.**

Last, Roach complains about counsel's failure to object to the State's argument referencing Parks: "[C]alling this witness to trial essentially to lie for him, it's quite clear the defense witness was not credible from the very moment he began talking. . . .Calling this witness to the stand simply to lie for him demonstrates that the defendant has not taken responsibility for his actions and that he's still willing to lie and present lies in order to avoid responsibility." "A prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App 1998). But this argument, rather than an attack on defense counsel, was an attack on Parks's

20

credibility. And this argument was also responsive to counsel's arguments made at guilt-innocence that Clayborne-Green had falsely accused Roach of assaulting her. *See Orcasitas v. State*, 511 S.W.3d 213, 220–21 (Tex. App.—San Antonio 2015, no pet.). Again, the State and the Defense offered competing sets of facts: either Roach and Johnson both assaulted Clayborne-Green, or only Johnson assaulted Clayborne-Green. The jury could only credit the State's evidence over the Defense's evidence if it found Parks's testimony incredible and the State's evidence credible. In such a case, a prosecutor is allowed to argue that the witnesses for the defense are not worthy of belief. *See Satterwhite v. State*, 858 S.W.2d 412, 425 (Tex. Crim. App. 1993). And the trial court would not have erred by overruling an objection to the testimony. *Freeman*, 340 S.W.3d at 727.

We hold Roach has not shown, on this record, that counsel's performance was deficient for failing to object to these arguments. *See Compton*, 666 S.W.3d at 731; *Randolph*, 353 S.W.3d at 895: *Satterwhite*, 858 S.W.2d at 425.

As appellate counsel forthrightly notes, trial counsel has not yet had the opportunity to respond to the claims of ineffective assistance of counsel and these claims may be raised under a petition for writ of habeas corpus that would allow for further development. *See Lopez*, 343 S.W.3d at 143 ("Unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus."). We overrule Roach's ineffective assistance complaints.

**CONCLUSION**

Having overruled all of Roach's appellate issues, we affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   January 30, 2025

Do Not Publish